I'd like to talk a little bit about what this case is not, because I think it's very important. The state has advanced the argument that this was a case of where the magistrate judge weighed the evidence, drew the necessary inferences, and decided in favor of the defendant. I submit that that's exactly what did not happen in this case. And the reason I say that is that we have the court's findings in which the court states flat out that the court does not make any findings. And secondly, we have, rather, if you examine the findings in the case, you will determine that the magistrate judge did not make any inferences whatsoever. The magistrate judge found the case and said, that's it, no inferences, no nothing, and we arrive at this result. And that means that these cases that the state is relying on for a clear error finding don't apply, because when the magistrate judge says the court does not, that's a neutral statement. But that subsumes cannot and may not. It means it isn't done for whatever reason. And I say that with the emphasis I do, because it is so apparent in this case that that's exactly what happened. The facts of this case show a long pattern of discrimination against Jane Mother, and worst of all, the filing of the family court petition. Now, one other thing that the state insists there is no evidence ever intended to take the child, R, away from Jane Mother. Well, that's not an issue in this case. No one is claiming that the state filed the family court petition with the intent to take the child away from Jane Mother. But what the state did is filed it with the intent to scaring her into believing that they were going to take the child away from her. And I'd like to point to something which was not put in the briefs in this case, but immediately prior to the warning, the bold, all-capital-letter warning about taking away the child, you can find this on excerpts of record of page 4, the prayer, wherefore it is prayed that inquiry be made into the foregoing allegations and the action be taken pursuant to the provisions of Chapter 587, Hawaii Revised Statutes, including, but not limited to, family supervision, etc. The state specifically reserved the right to ask that the child be taken away from Jane Mother, and there are claims that they never asked for. It seems to me that the magistrate judge certainly recognized that there was some insensitivity on the part of the state, and some comments, perhaps, that were even more than insensitive. But, having sat there and heard the evidence up until the point it ruled, it found that the state had a legitimate interest in doing something with the child, and that was to do something about the child's horrific attendance record in school, and that it reasonably believed that the mother was compounding the problem of attendance. So, that conclusion, or the finding, has support in the record, so that makes the key question, I think, of whether you, in turn, have shown that that reason is pretextual. Well, I think the answer to that is that the state had, at the time they filed this, the family psychologist, which pointed out that this child had a disability, an anxiety disorder, and later determined to be affecting sleep, and the thing that I have concern about is they have this due process hearing, they have informal means, once they had that information, and the magistrate found they had that information, it is not unreasonable to expect them to inquire into it before filing a family court petition. Well, I mean, it may have been overkill, it may have been preferable to go one route rather than the other, but that doesn't necessarily mean that the option they chose, which is in effect to do both, because each addresses a somewhat different concern. Yes, that is correct, but then they dismissed the due process hearing and went forward with the family court petition, and the concern that I expressed... It was the reverse, actually, wasn't it? No. I mean, they filed a family court petition, which worked, I mean, in effect, it got a resolution, and so, I mean, where does that get you? Well, I think that there is not necessarily a causal connection. The reason the child's picked up is they involved the father to coming over and picking him up and bringing him there. There's nothing to show that would not have occurred had the family court petition... Well, it hadn't occurred up until then, and doesn't that actually lend some evidentiary support to the notion that the mother may have been a contributing factor? Only if you close your eyes to the other evidence that existed in the case. Sure, but the question here, because you do have a bench trial and a judge's finding, is whether you're firmly convinced that there was error, that is, whether there's, in effect, no evidence that supports the finding that was made. Well, I don't think that's a test because of the magistrate judge's findings that the court does not draw inferences. Well, okay, we can discuss that in a minute, but stick with me and assume that that's not a problem right now. Why is there no evidence in support of the finding that was made? Well, I think the events that followed the family court proceeding offer the evidence you need that it was a pretext. The refusal to provide the services, the long, drawn-out procedure of where services are recommended and not provided, or services less than recommended are provided. There were periods of nine months with no services provided. I think it's very clear in this case that the school district did not want to spend the money on this one child, as opposed to all the other children. And that's why that evidence is so important, because when you look at that evidence and carry it back into the context, there is a long pattern here through elementary and middle school of the required, and the state's effort to blame the mother for the problems, when in fact it became very, very clear that the child had some serious problems about going to school, the anxiety, the sleep disorder, and so forth, and the child needed some positive treatment. That's where I say the magistrate judge went wrong. How much time do I have left? Well, you have about 11 minutes. Would you like to save it? I think I would. I'd like to hear from the state. All right. Let's do that. Ms. Rehobo. Good morning. May it please the Court, Deirdre Marie Iha, appearing on behalf of the State of Hawaii, Apeli. We respectfully urge this Court to affirm. The District Court properly reviewed the evidence and correctly applied Federal Rule of Civil Procedure 52C, governing judgments on partial findings. As Your Honor has acknowledged, this was a decision at trial, and the District Court was acting as the trier of fact. The clearly erroneous standard applies. Mother has made no showing that the District Court's conclusions about the retaliation claim, as premised on the filing of the educational neglect petition, were clearly erroneous. After a history of significant attendance problems, and after other efforts had failed, the petition was filed in an effort to benefit ours education. This was the reason the State filed the petition, and Mother has failed to show that this reason is a pretext. The District Court properly followed the rules governing judgments on partial findings. No This is quite clear from this Court's ruling in Ritchie v. The United States, which holds that the District Court is not required to draw any inferences in favor of the non-moving party. Instead, the District Court, acting as the trier of fact, quote, makes findings in accordance with its own view of the evidence. The trier of fact is entitled to make logical inferences and deductions. These are not the same as the procedural inferences that we see typically in summary judgment motions. There is no error in the District Court acting as the trier of fact, evaluating the evidence before it. Mother's argument that she was denied inferences in her favor is therefore incorrect as a matter of law. Furthermore, Mother's complaint that she was denied inferences in her favor actually amounts to a complaint about the District Court's weighing of the evidence before it. However, Mother fails to properly challenge any of the factual findings made by the District Court. Except for the interpretation of the rules of civil procedure, the clearly erroneous standard governs this case. ADA and Section 504 retaliation claims are established in the same manner as retaliation claims under Title VII. It is well established that a finding of intent to retaliate, which is the question presented here, is a finding of fact and is I was a bit troubled by the evidence that the school superintendent said they planned to have the family court judge remove the custody of the child and assign the custody to the father because the mother was harassing the school and had requested too many IEPs. I mean, that almost seems like a smoking gun of this is the real intent of the school system. It is to retaliate. I understand your concern, Your Honor. The District Court did find that Mr. Shishido had made that statement. However, the District Court also found that there was no evidence presented that Mr. Shishido had actually made the decision to file the petition or instructed anyone to do so or that he was aware of the full factual background regarding ours inability to attend school. And there was some evidence in the record, wasn't there, that Mr. Shishido had spoken to Ms. Lipman and encouraged her to go forward with the petition? I don't recall any such evidence, Your Honor. Furthermore, the District Court made a finding of fact that the petition did not, in fact, threaten mother with a change in ours custody. That was based on the language of the petition, the testimony by Dean Nagamini, who had served as a guardian ad litem, about the Safe Family Home report and the family court's own proceedings. So that finding of fact mother would have to demonstrate was clearly erroneous. Mother has failed to demonstrate pretext under the familiar McDonnell-Douglas burden-shifting framework. Pretext is established by showing that the defendant's proffered reason is unworthy of credence. Under Villaremo, the relevant focus is on the state's honest belief that mother was contributing to or exacerbating ours inability to attend school. Mother has was a pretext. By the time the petition was filed, our had 200 absences and over 180 tardies between kindergarten and fifth grade. And as I said before, mother's own witnesses showed that neither the petition, the Safe Family Home report, or the family court proceedings included any request to alter ours custody. The final paragraph in the petition was, excuse me, boilerplate and is required by Hawaii statute. During his argument, Mr. Partington indicated that no one is claiming that the intent of the petition was in fact to terminate mother's parental rights. The petition does have some statements in it, though, doesn't it, saying that father has agreed to take custody of the child and that that subject was raised during the hearing? I believe paragraph 13, father is willing to care for the child and wants to be more involved in parenting the child but fears how mother will react. It does say that, your honor. Part of preparing the petition and the contents of this document are governed by Hawaii statute, chapter 587, is that the person who is filing it must lay out whatever available options are out there. It does not indicate that this was in fact their intent. The strongest indication of their intent is what they actually sought, which is family supervision. And family supervision is a method under chapter 587 of ensuring delivery of services to the entire family, the parents, any other responsible adults who may be involved in the child's life, to ensure that the family is properly addressing the entire scenario surrounding whatever problems are facing the child. So when Mr. Partington points to including but not limited to, that's no different than requesting the same kind of language in a complaint. They're not foreclosing their options. That does not mean that anything other than what is stated here was their intent. The intent of the petition was to seek family supervision. The district court did find that the state knew about Dr. Ching's May 1998 letter prior to filing the petition. But more importantly, the district court also found that the state still could have reasonably believed that the petition was necessary to determine if there was a link between our disability and his attendance problem. That again was a finding of fact and Mother has made no showing that this conclusion was clearly erroneous. Given that the attendance problem of that letter indicated that the attendance problem was due to his problems or his anxiety about falling behind in school, I was also concerned about that there was substantial evidence in the record that the school actually wasn't following through with what they had agreed to in the IEP. And so in giving him the sort and additional education that he needed. And so I was wondering about that connection that the school is saying, oh, we're very concerned about his educational problems and yet they're not fulfilling their IEP obligations. The evidence does show that there were points in time when R did not receive all the services listed in his IEP. However, I think the complete picture of the evidence shows that Mother was herself hindering the application of those services. She turned down services, she turned down tutoring, she rejected tutor after tutor. At one point after the petition, a doctor had made a recommendation that a master's level tutor be provided. Dr. Hoak testified that the minute he heard that suggestion, he thought that the state wasn't going to be able to deliver. Such people just weren't in Hawaii at the time. There's a couple of findings, there's a particular finding by the Felix Consent, excuse me, by the FCRO office saying that, you know, Mother herself was partially responsible for the tutoring services because she kept insisting on the master's degree. So some of it I think was a combination of the circumstances. But I don't think that the evidence shows that the state was deliberately denying any of these services. There were difficulties in administering it, but that does not rise to the level of retaliation. Wasn't there a statement by the principal, Ms. Lipman, that she couldn't spend her whole budget on one student and that there was a... There was no testimony to that effect. I don't recall where in the record that statement appears, but there was that someone did relay that she had said that. But again, the fact that, you know, they're facing difficulties in delivering the services does not establish that the petition was filed in an effort to retaliate. The standard is much higher than to show that, for example, there was a lack of compliance under the IDEA. This is not an IDEA case. It's a case under ADA and Rehabilitation Act retaliation claims. And the standard is much different. In her brief, Mother objects to the use of the word possibility in the district court's description of Mother's potential contribution to ours attendance problems. This is on page 51 of the order, excerpts of record at 86. Mother claims that this language shows that the district court was basing its conclusion on speculation. However, there was no speculation here at all because Mother has misidentified the relevant factual question. No final factual determination was ever required about Mother's contribution to ours attendance problem. The family court case was dismissed and the district court was never presented with this question. The only question the district court had to answer was whether the state reasonably, excuse me, that Mother was contributing to ours attendance problem. The school had direct experience with ours, you know, serious attendance problem and inability to come to school and this was the basis of the petition. Mother objects to being made to prove that the state's true purpose was in filing the petition was to alter ours custody and repeated that argument here. However, that was her argument to show pretext, both below and before this court. It appears in paragraph 15 of the complaint and it was argued on October 7, 2005 before the district court. That portion of the transcript appears in the supplemental excerpts of record. Mother's subjective reaction to the petition does not show pretext. The state does not dispute that Mother was upset and unnerved by the petition. However, it is the state's reasons, not Mother's reaction, that are relevant when determining pretext. Your Honor posed a question about the dismissal of the due process request. The due process request was dismissed after mediation between both parties and they agreed to dismiss it at that point. The same point in time, this is late July 1998, the parties, both sides, agreed to continue the family court proceeding until about a month or so into the following school year. So that explains the timing of the two proceedings. The petition was filed to benefit ours education. Mother has failed to show that this reason was a pretext and therefore her retaliation claim fails. The district court's order was correct and shows a careful evaluation of the evidence before it. Mother has failed to show that any aspect of the district court's ruling was clearly erroneous. We respectfully request that this court affirm the order and judgment of the district court. May I inquire if there are any further questions? I don't think so. Thank you. Thank you very much. Mr. Partington. Thank you, Your Honor. If I understood the question that was earlier asked, where in the record, I believe there was the evidence that Dr. Hauk testified that he had met with the DOE superintendent in July and Mr. Shishido was also present at that meeting. Mr. Shishido had the supervisory authority over Ms. Slipman and it was at that point that he was severely reprimanded for having interfered in the case and made his comments about the inappropriateness of the family court case. I think this is extremely important because the DOE had its own experts. For example, they could have referred R to a psychologist from the DOE. They had them available. They were all made available later in the case and done an evaluation and made a determination before going to the extreme option of filing a family court petition. I think it's extremely important here. Jane Mother didn't know what purpose the state had when she received this. The state's argument, it doesn't matter. It does matter if we're looking for the kind of evidence we are here of a pretext to scare her out of proceeding with the request for services for her child. Consistently, her child did not get the services that were recommended. Any mother would be concerned about that. What the state didn't like is that Jane Mother kept asking over and over again, not for anything unusual. She asked for what the law provided. A very good example is they wanted to place her in special education class where it was noted they dump children who have a hard time learning. Special education wasn't what this child needed. Jane Mother was every bit within her rights in saying no. He needed special help, but it wasn't special education that he needed. That's just a disagreement between the mother and some of the educational folks, which might be more pertinent if this were an IDEA case. But since it's not, and since the evidence including that was before the district court who heard all of it and heard the extent to which Mother herself agreed or did not agree to psychological exams, to sharing information, to counseling, to a whole bunch of other things, the district judge was the one who resolved those disagreements, wasn't he? Well, yes, but I think it's important to look at the family court proceeding to determine what was the state's intent in filing it. The state did not make any effort to find out what R's condition was when they filed it. In fact, their answer was they denied knowing what his condition was, when in fact they had the information. And I think this finding is very critical by the magistrate judge. They knew the child had an anxiety problem. They knew that one psychologist had found that that was the reason the child wasn't attending class. And what's the link between that and getting a reversal? Well, I think it's very clear the state made no effort to make a fair determination whether family court was determined. What they wanted to do was scare Jane Mother out of proceeding further, and that was their motive for filing it. And if they're correct, they didn't even know about Dr. Ching's report. It's because they weren't interested in the report. They wanted to scare Jane Mother out of insisting that the law be complied with. Now, I think the real problem with this case is the magistrate judge was insisting that there be direct evidence, not merely a smoking gun, but a videotape showing that the school officials had agreed to retaliate against Jane Mother. And that's troubling. The magistrate judge wouldn't accept any circumstantial evidence, because in her view, she didn't make any inferences in favor of the plaintiff. I think this is very important. Well, it's not that she didn't make any inferences in favor of the plaintiff. She did, in fact. She found in Mother's favor with respect to the Shibayashi statement. She found in Mother's favor with respect to a number of other things. She just didn't find in Mother's favor the bottom line. But the matters for which she found in Jane Mother's favor, there was direct evidence. The matters that she didn't find were the matters that required logical and necessary inferences. And that is our complaint with this. She literally took that statement that you don't draw inferences literally. And I think that's the problem. Where there was direct evidence that X said something, yes, she found that. But where you had to infer something, no inferences were drawn.
judges: Goodwin, Rymer, Ikuta